UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | |
| FOR CRIMINAL COMPLAINT AND ) | M.J. No. 20-MJ-2047-MBB |
| ARREST WARRANT OF JESUS REYES ) | |
| ) | |
| ) | **FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Task Force Officer Robert R. LeFebre, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I am employed as a detective with the Lawrence Police Department, where I have worked since 1999. I currently am assigned as a Task Force Officer to the Drug Enforcement Administration ("DEA"), and in particular to Task Force 4 – Cross Borders Initiative ("CBI"), which is a task force incorporating federal, state, and local law enforcement officers. I have been a Task Force Officer with the DEA since 2010. I am a graduate of the Lowell Police Academy.

2. As a Lawrence Police detective and DEA Task Force Officer, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the police academy and have attended additional specialized training courses in furtherance of my past and current assignments, including the Basic Narcotic Investigation course conducted and presented by the DEA training staff.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and

witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of an application for a criminal complaint and arrest warrant charging that, on or about November 21, 2019, Jesus Reyes ("REYES") (DOB xx-xx-1963) distributed and possessed with intent to distribute 40 grams or more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi).

5. As part of my duties, I am currently participating in an investigation into the criminal activity of a drug trafficking organization involving the defendant and others. I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in this investigation; (b) my review of records related to this investigation; (c) information provided to me orally and in writing by other law enforcement agents; and (d) my experience and training as a criminal investigator.

6. Because this affidavit is being submitted for the limited purpose of securing the requested criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to

establish the foundation for probable cause that REYES violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi).

## PROBABLE CAUSE

7. In a series of recorded telephone calls, WhatsApp calls, and text messages, leading up to and including November 21, 2019, members of CBI formulated plans for a special agent acting in the undercover capacity (hereinafter, "UC") to purchase 100 grams of fentanyl for $3,000 from an identified Hispanic male[1] known to law enforcement or from one of said identified male's associates. These calls and texts messages were in Spanish. The plan was for on November 21, 2019, the identified Hispanic male would sell the UC approximately 100 grams and "front" the UC another 100 grams of fentanyl. Fronting is common in drug dealing and involves a drug dealer giving a customer a quantity of drugs with the expectation that the dealer will be paid for them on a later date.

8. Specifically, on a recorded phone call through WhatsApp on November 20, 2019, the identified Hispanic male indicated that he could make the sale of fentanyl to the UC on November 21, 2019 and said "my friend would be there tomorrow but he comes down early." The identified Hispanic male then said "I can leave it with him but he is an older male." When the UC asked what time, the identified Hispanic male said that the older male comes down at 10 from Lowell to Lawrence. During the call, the identified Hispanic male referred to the older male as his "uncle."

---

[1] This Hispanic male is known to and identified by DEA but is not being charged at this time.

9. In a text message on November 21, 2019, the identified Hispanic male initially instructed the UC to meet him at 120 Willow Street[2] in Lawrence, Massachusetts. Shortly after giving the UC the address of 120 Willow Street, the identified Hispanic male instructed the UC to meet him instead at 200 Walnut Street in Lawrence, Massachusetts.

10. At approximately 11:45AM, the UC responded to the area of 200 Walnut Street to purchase fentanyl. Surveillance units also set up in the area of 200 Walnut Street to make observations.

11. At approximately 12:11 PM, surveillance officers and the UC saw a grayish silver Toyota Rav-4 bearing Massachusetts license plate 48K170 pull up and park just in front of the UC vehicle on the opposite side of the street. The Rav4 was occupied by two individuals, the driver and a front seat passenger. The driver was an older Hispanic male, wearing a backwards dark colored baseball hat, later identified via a Massachusetts Registry of Motor Vehicles ("RMV") photograph as Jesus REYES. The front seat passenger was later identified as the known Hispanic male who had planned to meet the UC at 120 Willow Street for the sale of 100 grams of fentanyl for $3,000 and fronting of an additional 100 grams.

12. Shortly thereafter, the UC received a phone call from the identified Hispanic male, who planned to meet the UC, who asked what vehicle the UC was driving. The UC told the male what vehicle he was driving. The male then told the UC that an older male with a backwards baseball hat was going to be meeting the UC. Their phone call subsequently ended.

13. Immediately after the phone call between the UC and the identified Hispanic male, the UC saw the driver of the Rav4 get out of the car. The UC saw that the driver was an older

---

[2] In an affidavit submitted to the Court yesterday, January 8, 2020, related to this case, the undersigned stated that this November 21, 2019 drug transaction occurred at 120 Willow Street. This was an inadvertent error and the transaction occurred at 200 Walnut Street.

4

Hispanic male wearing a backwards dark-colored baseball hat. REYES then walked to the UC's vehicle, got in and sat in the front passenger seat. The UC later looked at a RMV driver's license photo of the registered owner of the Rav4 and positively identified the Hispanic male with the backwards baseball hat as Jesus REYES (xx-xx-1963).

14. Once REYES sat inside the UC vehicle, REYES gave the UC a green cellophane plastic wrapping containing a hard rock-like substance that appeared to be fentanyl. The UC then handed REYES $3,000. REYES got out of the UC vehicle and proceeded to walk back to the Toyota Rav4. The UC then left the area. The UC wore a transmitting/recording device during his meeting with REYES.

15. At approximately 12:14 PM, the UC placed a recorded WhatsApp call to the identified Hispanic male with whom the UC had planned to meet. The UC told the male that the UC had just met with REYES. In sum and substance, the identified Hispanic male told the UC that the drugs had a small "mark" that the identified Hispanic male places on all of his product and that the product was "hard" and "very good." Their conversation then ended.

16. The package the UC received from REYES had a gross weight of over 200 grams (with packaging). Based on my training and experience, together with the color, texture, appearance, and pricing of the substance supplied by REYES to the UC, I believe that the substance was fentanyl. Due to safety concerns that pertain to the handling of fentanyl, no field test of the suspected fentanyl was performed. The substance was submitted to the DEA laboratory for analysis but results have not yet been received.

## **CONCLUSION**

17. Based upon the evidence set forth above, as well as my training and experience, I submit that there is probable cause to believe that on or about November 21, 2019, REYES distributed

and possessed with intent to distribute 40 grams or more of a mixture and substance containing N-phenyl-N-[ 1- (2-phenylethyl) -4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C §§ 841(a)(1) and 841(b)(1)(B)(vi).

I declare that the foregoing is true and correct.

ROBERT LeFEBRE
DEA Task Force Officer

Sworn before me this 9th day of January, 2020.

HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

6